# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TERRY SCHWAB,

           **Petitioner,**

        v.

WARDEN, MARION CORRECTIONAL
INSTITUTION,

           **Respondent.**

           **CASE NO. 2:15-CV-0491**
           **CHIEF JUDGE EDMUND A. SARGUS, JR.**
           **MAGISTRATE JUDGE KEMP**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, the return of writ, the traverse, Respondent's reply to the traverse, Respondent's supplemental answer, and Petitioner's reply to that answer. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this action be **DISMISSED** .

## I. Facts and Procedural History

The following facts are taken from the parties' filings, which include all of the relevant state court documents. The Court will focus on the procedural history of the case because Respondent's primary argument is that all of the claims Petitioner seeks to raise in this Court were procedurally defaulted.

This case involves Petitioner's convictions after a jury trial in the Athens County Court of Common Pleas on five total counts relating to two drug transactions or drug-related incidents which occurred on March 9, 2011 and April 1, 2011. After conviction, Petitioner was sentenced to a total of twenty years in prison. *Return*, Ex. 7. Through

counsel, Petitioner appealed to the Fourth District Court of Appeals, which granted him leave to appeal out of time (his notice of appeal was one day late). In his brief (Ex. 11), Petitioner's counsel raised only two assignments of error: that the evidence presented at trial was insufficient to support the convictions, and that the convictions were against the manifest weight of the evidence. In a decision issued on September 23, 2013, the Fourth District Court of Appeals affirmed Petitioner's convictions and sentence with one exception. It found that there was not sufficient evidence to support a charge of corrupting another with a drug, one of the charges arising out of the March 9, 2011 drug transaction. *State v. Schwab,* 2013 WL 5476402 (Athens Co. App. Sept. 23, 2013). However, upon the State's motion to reconsider, the court of appeals reversed itself and sustained that conviction. *State v. Schwab*, 2014 WL 356628 (Athens Co. App. Jan. 21, 2014). Petitioner did not appeal that decision to the Ohio Supreme Court.

Proceeding *pro se*, Petitioner then filed a motion to reopen his appeal pursuant to Ohio Appellate Rule 26(B). He asserted in that motion that his appellate counsel was ineffective for failing to raise certain issues on appeal, that the same attorney was ineffective at the trial level, that his convictions for drug trafficking and drug possession were allied offenses of similar import and should have been merged for sentencing purposes, and that the trial court's jury instructions were incomplete. *Return*, Ex. 16. In an entry filed on May 29, 2014, the state court of appeals denied the motion, citing, as its reasons, both that the motion did not attach relevant parts of the record (something which is required by Ohio Appellate Rule 26(B)(2)(e)) and, as to the second and third claims,

because those claims are not properly raised in a 26(B) motion to reopen. *Return*, Ex. 17.

Petitioner appealed that decision to the Ohio Supreme Court, which declined to hear his

appeal. *State v. Schwab*, 140 Ohio St. 3d 1442 (Sept. 24, 2014).

On January 7, 2015, Petitioner again sought relief from the state court of appeals, this

time by filing a Civil Rule 60(B) motion in that court. This effort fared no better. The court

of appeals denied the motion on February 2, 2015, noting that Rule 60(B) does not apply

to decisions rendered by a state court of appeals. *Return*, Ex. 23. Petitioner did not take an

appeal from that decision.

On February 4, 2015, Petitioner filed this federal habeas corpus petition. He asserts

that he was denied his right to effective assistance of appellate counsel (ground one); was

improperly sentenced because two of his convictions were for allied offenses of similar

import (ground two); was deprived of a fundamentally fair trial due to improper jury

instructions (ground three); and that the state court of appeals made an unreasonable

determination of the facts in light of clearly established federal law (ground four).

Respondent asserted, in the return, that these claims were not clearly spelled out and were

not supported by facts, and also that they were all procedurally defaulted. That assertion

was repeated in Respondent's reply to the traverse; the traverse contained a more detailed

explanation of the basis of Petitioner's claims.

The Court first addressed the petition in a Report and Recommendation filed on

August 1, 2016 (Doc. 15). The Court noted that Petitioner's claim that the evidence was

insufficient to support the conviction for corrupting another had never been appealed to

the Ohio Supreme Court, and that Petitioner still had a remedy available to him in the form of a motion for leave to file a direct appeal. That meant that the petition filed in this case was a "mixed petition" containing both exhausted and unexhausted claims. Consequently, the Court recommended dismissal of the entire case pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982) unless Petitioner elected either to seek a stay of the proceedings so that he could exhaust that claim, or unless he withdrew the claim.

Petitioner initially filed a motion to stay (Doc. 16). However, he then notified the Court that he moved for leave to file a delayed appeal with the Ohio Supreme Court, but that on November 9, 2016, that motion was denied. *See State v. Schwab*, 147 Ohio St.3d 1436 (Nov. 9, 2016). Consequently, since all of Petitioner's claims were now exhausted, the Court gave Respondent an opportunity to file a supplemental return of writ and gave Petitioner an opportunity to respond to that filing. As noted, both of these events have occurred, so the case is now ready to decide.

## II. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to

4

him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal

habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as

an independent claim before it may be used to establish cause for a procedural default.' "
*Edwards,* 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is
because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must
itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted
and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).
Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice'
standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529
U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the
> procedural-default doctrine in *Coleman*: "In the absence of the
> independent and adequate state ground doctrine in federal
> habeas, habeas petitioners would be able to avoid the
> exhaustion requirement by defaulting their federal claims in
> state court. The independent and adequate state ground
> doctrine ensures that the States' interest in correcting their own
> mistakes is respected in all federal habeas cases." 501 U.S., at
> 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the
> interplay between exhaustion and procedural default last Term
> in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144
> L.Ed.2d 1 (1999), concluding that the latter doctrine was
> necessary to " 'protect the integrity' of the federal exhaustion
> rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1
> (quoting *id.*, at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1
> (STEVENS, J., dissenting)). The purposes of the exhaustion
> requirement, we said, would be utterly defeated if the prisoner
> were able to obtain federal habeas review simply by " 'letting
> the time run' " so that state remedies were no longer available.
> *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those
> purposes would be no less frustrated were we to allow federal
> review to a prisoner who had presented his claim to the state
> court, but in such a manner that the state court could not,
> consistent with its own procedural rules, have entertained it.
> In such circumstances, though the prisoner would have

> "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

As the Court's summary of the state court proceedings shows, the only federal constitutional claim which was decided (at least once) on its merits by the state courts was Petitioner's claim, raised in his direct appeal, that the evidence was insufficient to support the convictions. As also reflected in that summary, Petitioner did not timely appeal the denial of that claim to the Ohio Supreme Court, and his motion for leave to file a delayed appeal was denied. That means that none of Petitioner's claims received a merits ruling from the last state court to consider them. Consequently, if the reasons the state courts gave for refusing to hear Petitioner's claims on their merits are supported by state law, Petitioner would have procedurally defaulted all of the claims raised in his habeas corpus petition. The Court will conduct this analysis on a ground-by-ground basis.

### A.  Ground One - Ineffective Assistance of Appellate Counsel

In his first ground for relief, Petitioner asserts that he was denied the effective assistance of appellate counsel.  He raised this claim in a Rule 26(B) motion filed in the Fourth District Court of Appeals.  That court denied the motion because Petitioner did not attach to it the relevant portion of the record available to him.  *See Return*, Doc. 8, Ex. 17. That is required by App.R. 26(B)(2)(e).  The appellate court relied on, among other authorities, *State v. McNeill*, 83 Ohio St. 3d 457 (1998), for the proposition that when an appellant has access to the record and does not attach the relevant portions to a motion to reopen, the motion is properly denied.  Petitioner timely appealed that ruling to the Ohio Supreme Court, but it declined to hear his appeal.  *Return* Ex. 19.  Petitioner asserts in his supplemental reply that he was unable to attach any more of the record to his motion than he did because neither the clerk of the appellate court nor his counsel responded to his requests for the record.  Essentially, he is contesting the appellate court's factual determination - based on the fact that Petitioner swore in an affidavit that he reviewed the record, that he cited to it in his motion, and that he attached some documents from the record - that he had access to the record but simply did not comply with the applicable appellate rule.  Respondent notes that such factual findings enjoy a presumption of correctness here, *see* 28 U.S.C. §2254(e)(1), and that Petitioner has not overcome that presumption.

This Court has had occasion in the past to discuss whether a Petitioner's failure to

comply with App.R. 26(B)(1)(e) constitutes the type of procedural default which bars federal habeas corpus review. In *Hutchison v. Warden, London Correctional Inst.*, 2015 WL 6798550 (S.D. Ohio Nov. 6, 2015), *supplemented* 2015 WL 8281443 (S.D. Ohio Dec. 9, 2015), *adopted and affirmed* 2016 WL 454944 (S.D. Ohio Feb. 5, 2016), Magistrate Judge Merz extensively discussed the history of that rule, including the fact that it became part of Ohio's Appellate Rules in 1993 and that it had been enforced in cases like *State v. McNeill,* in making his determination that the rule was a valid procedural rule, that it was actually enforced in that case against the petitioner, and that the rule was both firmly established and adequate to support the state court's determination. As the Court observed in *Hutchison, supra,* at *8, "the Rule protects an important state interest, to wit, that a litigant should put before an appellate court the portions of the record it needs to decide the questions presented. That is a virtually universal rule of appellate practice in the United States." Thus, there has been a procedural default of ground one unless there is some reason not to enforce it.

As noted, the only reason advanced by Petitioner is that the state appellate court wrongly determined that he had access to the record. However, as Respondent correctly notes, factual findings by state appellate courts are binding on this Court unless those findings are found to be unreasonable (and not just incorrect) based upon the state court record, and a habeas petitioner has the burden of proof on this issue by clear and convincing evidence. *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 320 (2003)("Factual determinations by state courts are presumed correct absent clear and convincing evidence

to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)"). There is no dispute that Petitioner did not attach much, if any, of the case record to his App.R. 26(B) motion. The state court explained why he likely had access to additional portions of the record. Whether right or wrong, its conclusion on that issue was not unreasonable, and Petitioner has not supplied any clear and convincing evidence to the contrary. Under these circumstances, this Court is required to uphold the factual findings of the state court of appeals. Based on that determination, Petitioner procedurally defaulted his claim of ineffective assistance of appellate counsel.

## B. Ground Two - Allied Offenses of Similar Import

Plaintiff's second ground for relief, as he states it in the petition, is that "Defendant's sentences for drug trafficking and possession are allied offenses of similar import for *Apprendi* purposes." Doc. 1, at 6. That claim was not raised on direct appeal but was included in the App.R. 26(B) motion. The same discussion applicable to the ineffective assistance of appellate counsel claims applies equally here, but, in addition, the state court of appeals held that the only claims which can be raised in a App.R. 26(B) motion are those relating to ineffective assistance of appellate counsel, and because this claim is not such a claim, it simply cannot be raised in an application for reopening.

App.R. 26(B) was specifically designed to allow a defendant to raise a claim of ineffective assistance of counsel in the appellate court, but not to assert other types of

claims.  *See, e.g., Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005).  Consequently, claims of the type presented in Petitioner's second ground for relief are not properly raised in an App.R. 26(B) motion, and the state courts have a valid reason for refusing to consider them when they are presented in that way.  It should also be noted that  Petitioner argued this claim before the state court of appeals only under Ohio law and not federal law.  That means that he did not fairly present it to the state courts as a federal constitutional claim, *see, e.g., Snider v. Tibbals*, 2013 WL 84933, *5 (N.D. Ohio Jan. 7, 2013), and because he can no longer do so, it is procedurally defaulted for that reason as well.

## C.  Ground Three -  Improper Jury Instructions

Petitioner's third ground for relief asserts that the jury was not properly instructed on the issue of drug quantity, and he was therefore denied a fundamentally fair trial.  His argument in support of this claim, when he presented to the state courts, actually appears to be that the State failed properly to prove the  bulk amount of drugs involved in the  case; he asserted that "the jury could of never been instructed right if the state never [brought] a copy of the [standard pharmaceutical reference] manual to determine bulk amount...." Doc. 8, Ex. 16.

Regardless of the way this argument was phrased, it was also raised only in the App.R. 26(B) application.   Again, all claims in that application  were procedurally defaulted, and, again, this claim was not presented as a claim of ineffective assistance of appellate counsel.  For the same reasons that grounds one and two were procedurally defaulted, this ground was as well.

## D. Ground Four - Sufficiency of the Evidence

This is the claim which Petitioner had not exhausted when he filed his petition, and which the Ohio Supreme Court declined to allow him to raise in his motion for a delayed appeal. Respondent argues that the claim was procedurally defaulted because Petitioner did not take a timely direct appeal to the Ohio Supreme Court from the decision of the state court of appeals (which first found merit in the claim and then later granted the State's motion to reconsider). Petitioner does not argue that his appeal was timely, but he seeks to excuse that procedural default by claiming that his appellate counsel was constitutionally ineffective for failing to notify him either of the issuance of the state court decision or the time limit for filing an appeal to the Ohio Supreme Court. He made the same argument in his motion for leave to file a delayed appeal. *See* Doc. 21, Ex. 1.

Respondent argues that there are numerous ways in which this ground for relief was defaulted, and that the failure of Petitioner's counsel to advise him that a decision had been made by the state appellate court - which can be grounds for excusing a procedural default, *see Smith v. Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426 (6th Cir. 2006) - does not support a finding that the claim was not defaulted. Among other things, Respondent asserts that such a claim had to be made in an App.R. 26(B) motion, but was not. Respondent also notes the substantial delay which occurred between Petitioner's knowledge of the issuance of that decision, which was no later than April, 2014, and his filing of the motion for delayed appeal, which did not occur until this Court advised him in 2016 that he had such a remedy available to him, and argues that this delay is not

attributable to any fault on the part of appellate counsel.

Respondent has not cited a case which specifically holds that the failure of counsel to advise a defendant of the issuance of a state appellate court decision can be raised only in an App.R. 26(B) proceeding. The issue was presented in the motion for leave to file a delayed appeal, and because it is a reason why the Ohio Supreme Court could have granted such relief, there is an argument to be made that the motion for delayed appeal is an acceptable way of making this claim. Further, it cannot be determined from the Ohio Supreme Court's decision whether that Court denied leave because it found no merit in Petitioner's claim that his appellate attorney should have told him when the state appellate court made its decision, whether it relied on the additional delay in filing the motion, or both. Consequently, rather than resolving the procedural default question, the Court will address the merits of this claim.

Petitioner was convicted of multiple offenses in state court. One of those convictions, arising out of a March 9, 2011 incident, was corrupting another with drugs. Petitioner argued on appeal that the evidence was insufficient to support that conviction, and the state court of appeals initially agreed. *State v. Schwab*, 2013 WL 5476402 (Athens Co. App. Sept. 23, 2013). It reversed that decision after the State moved for reconsideration. *State v. Schwab*, 2014 WL 356628 (Athens Co. App. Jan. 21, 2014). Respondent asserts that this is the only conviction addressed in Petitioner's fourth ground for relief.

As the state court in *State v. Schwab*, 2013 WL 5476402, *2-4, explained the underlying facts,

The Athens County grand jury indicted Schwab on one count of aggravated trafficking in drugs, two counts of corrupting another with drugs, one count of trafficking in drugs, and one count of aggravated possession of drugs. The matter proceeded to a jury trial, which produced the following evidence.

Byron Guinther, an agent for the Ohio Department of Public Safety, testified that Patricia Vore agreed to become a confidential informant ("CI") after he caught her selling food stamps. On March 9, 2011, she made a controlled buy of three or four Xanax "bars" and one Oxycodone pill from Schwab's house. On April 1, 2011, another CI spoke to Schwab's fiancée, Michelle Fidell. From that conservation, Guinther understood that "[t]hey didn't have anything in hand at that time but [Schwab] was in route back ***." Guinther learned Schwab and Crego were coming back from Columbus and what vehicle they would be in. He gave this information to law enforcement agents who initiated a traffic stop of the vehicle.

Patricia Vore testified that she has a drug problem and is a felon. Guinther caught her selling food stamps to buy heroin, so she agreed to become a CI to avoid prosecution for welfare fraud. She told Guinther she could buy drugs from Schwab. However, she was not confident about this, so before Vore officially became a CI she went to Schwab's home on her own to see if she could buy drugs. Her friend Robert Degarmore was there, and she bought a "Roxy 30," i.e., Oxycodone, from him. Schwab told Vore he would have Xanax "in a few days." Vore also testified Schwab told her he would "have the Xanax and the 30's."

Vore made her first controlled buy from Schwab's house on March 9, 2011. When she arrived, Schwab was on the phone, Fidell, and Crego were in the living room. Vore asked about Xanax, and Crego pulled out a "big bag" of Xanax bars. Crego "looked up at [Schwab] and he gave her like a nod, like go ahead and give her what she wants kind of, because she didn't know me." He also told Crego, "Give her what she wants," in regards to the Xanax. Crego counted the bars out on a table. Fidell also got pills out—she had "the 30's, the pills, or the 15's," i.e., the Oxycodone. Vore negotiated with Fidell and ultimately bought Xanax bars and one Oxycodone pill. Vore made two more controlled buys at Schwab's house but dealt with Fidell both times.

Eighteen-year-old Tara Crego testified that she and her mom lived with Schwab for several years. He had medical problems, and Crego and her mom helped administer his medications. Crego suggested he abused pain

medications—he snorted pills and took more than he could get through doctors. Sometimes Crego went with him to Columbus when he had doctor's appointments. On the way home, they would fill his prescriptions and four or five hours later people would come to buy drugs, typically "30's and Xanax." People bought drugs multiple times a week. Crego claimed Schwab told her mom to sell his drugs for him. Fidell did and gave him the money.

Crego testified about two incidents that occurred when she was 17. On March 9, 2011, a woman came to the house and asked if "anybody had anything," and "we said yes." Schwab told Crego to "[j]ust give her anything." Fidell took the woman into the kitchen and "laid them out on the table * * *." According to Crego, her mom and Schwab told her to give the woman Xanax bars. Crego got a bag of Schwab's Xanax bars from a kitchen cabinet and counted out four. The woman put her money on the table. Crego sold four bars to the woman, and Fidell sold the woman "[a] 30." Crego testified that this Oxycodone also belonged to Schwab. The sale occurred in the kitchen, and during it, Schwab stayed in the living room on the phone.

On April 1, 2011, Crego went with Schwab and Degarmore to Columbus. During the road trip, Schwab and Degarmore each snorted two Oxycodone pills from a bottle in Schwab's pocket. While in Columbus, Schwab briefly went inside a house of a person Crego did not know before the group went home. Schwab handed his pill bottle to Crego when police stopped them. She thought he did so because he was scared or nervous and she was "underage" and "wouldn't have got checked or searched." She hid the bottle in her bra but ultimately gave it to police.

Crego testified she was charged with various offenses in a juvenile court case due to these events. She had an adjudicatory hearing and pleaded guilty to aggravated possession of drugs, tampering with evidence, and trafficking in drugs—all felonies. However, if she testified truthfully against Schwab her case would be "disposed of as a misdemeanor and not as a felony." On cross, Crego admitted that when she first spoke to police, she did not tell them Schwab did anything wrong.

Robert Degarmore testified that on April 1, 2011, he and Crego accompanied Schwab to Columbus so Schwab could get some pills. Schwab went alone into a house there for a few minutes before the group headed home. Degarmore claimed Schwab did not show him any pills but admitted they "did two pills" together on the way home. Later the police stopped them, and Crego gave the officers a bottle of pills. He did not know how

Crego got the bottle, but Schwab was the last person he had seen with it. Degarmore claimed that during his first police interview, he lied about what he knew because he was under the influence of drugs and trying to save his "own ass."

Michelle Fidell testified she had two felony convictions and was incarcerated. Her first conviction was for selling Oxycodone in Schwab's house in 2010. The second was for the March 9, 2011 incident. In exchange for her truthful testimony, the State agreed to not oppose judicial release on her 2010 case. Fidell denied ever selling drugs for Schwab and gave inconsistent testimony on whether she ever sold his drugs without his consent. Fidell claimed that she normally sold her own pills. She gave inconsistent testimony on Schwab's level of awareness of her activities. Fidell testified that she sold her own pills on March 9, 2011 "[a]s far as I can remember." She could not remember if she had someone waiting to buy pills that Schwab was bringing from Columbus on April 1, 2011.

The State presented evidence that the pill bottle seized during the traffic stop contained 146 Oxycodone pills. The bottle indicated it contained 84, 15 milligram tablets of Oxycodone prescribed to Schwab and that he was to take one tablet three times a day. According to a report on Schwab's prescription medications, a doctor had last prescribed him 84, 15 milligram Oxycodone pills on March 14, 2011. Guinther testified that during an interview with police, Schwab claimed he sometimes took 12 pills a day. However, on the recording, Schwab also claimed he sometimes took less. Schwab suggested the pill bottle contained more pills than the bottle said because he put pills from other prescriptions in it. He denied knowing Crego had the pills during the stop but claimed she sometimes carried his pills in her bra. Schwab claimed that in the past, he was shocked to learn Fidell had sold his pills. He claimed he never sold drugs and denied knowledge that anyone recently bought drugs in his home.

For the March 9 incident, the jury found Schwab guilty of: 1.) complicity to aggravated trafficking in drugs (Oxycodone) in the vicinity of a juvenile; 2.) corrupting another with drugs (Oxycodone); and 3.) complicity to trafficking in drugs (Alprazolam) in the vicinity of a juvenile. For the April 1 incident, the jury found him guilty of: 1.) corrupting another with drugs (Oxycodone); and 2.) complicity to aggravated possession of drugs (Oxycodone) in an amount equal to or in excess of five times the bulk amount but less than 50 times the bulk amount.

The appellate court first addressed the March 9 incident. It held that the evidence was sufficient to show that Petitioner was complicit in the sale of drugs on that date based on testimony that Petitioner participated in drug sales on prior occasions, that he told his girlfriend to sell his drugs for him, that he advised the purchaser that he would have drugs available on or about March 9, and that he nodded his head and said "give her what she wants" when she came to buy drugs on that date. As to the charge of corrupting another - in this case it was Tara Crego, the juvenile - with oxycodone, however, it reasoned that the evidence did not show that Petitioner had furnished her with that substance. Rather, she handled the transaction involving the Xanax bars and not the oxycodone tablet, which was sold by Michelle Fidell. That conviction was reversed.

As noted, the State moved to reconsider that portion of the Fourth Appellate District Court's decision. In granting that motion in *State v. Schwab*, 2014 WL 356628, the court addressed the State's argument that it relied on a dictionary definition, rather than the proper legal definition, of what it means to "furnish" drugs to another. It noted that the jury instructions in Petitioner's case, which were taken from *Ohio Jury Instructions* §525.02(9), defined "furnished" as meaning "provided, supplied, or gave access to." It also acknowledged that the evidence showed that all residents of Petitioner's home, including Tara Crego, had access to the medicine cabinet where he kept his oxycodone. Finally, relying on the fact that Petitioner did not object to that jury instruction and did not assert even plain error on appeal with respect to it, the court concluded that Petitioner had essentially conceded the point that the evidence at trial was sufficient, under the instruction

18

given to the jury, to support the corruption conviction.

Petitioner attacks this ruling as unreasonable. He concludes that the state court of appeals essentially followed this reasoning process: (1) merely allowing a juvenile to have access to oxycodone is not a crime; (2) the trial court's instructions to the jury on this issue misstated Ohio law; but (3) Petitioner did not object to those instructions; so (4) it was acceptable for the jury to convict Petitioner based on evidence that he gave Tara Crego access to his medication, even though that is not a crime in Ohio. This reasoning process, he argues, "has no place in [A}merican jurisprudence." *Supplemental Traverse* Doc. 24, at 6. That was not exactly the argument he advanced in his appellate brief, where he simply argued that neither on March 9 nor April 1 did he furnish or administer any drugs to Crego for her own use or for sale to others. *See Return*, Ex. 11. His challenge here is not so much a traditional challenge to the sufficiency of the evidence, but rather a claim that the Ohio courts expressly permitted him to be convicted based on conduct that is not a crime in Ohio.

Petitioner's argument rises or falls with the proposition that the jury instructions given in this case do not accurately define the term "furnish" as it is used in R.C. 2925.02(A)(4)(a). That is, in the first instance, a question of state law. Although the decision in his case does not expressly state that the definition contained in the Ohio pattern jury instructions is correct, neither does it say otherwise - it simply leaves the question open. *See State v. Schwab*, 2014 WL 356628, *3. Other Ohio courts have approved that instruction. *See, e.g., State v. Patterson*, 2015 WL 6447270 (Trumbull Co. App. Oct. 30,

2015); *State v. Hardison*, 2007 WL 257680 (Summit Co. App. Jan. 31, 2007). In the absence of any authority supporting the proposition that this particular jury instruction mis-states Ohio law, and in light of the fact that Petitioner did not present that argument to the state courts or give them the chance to consider it, this Court will not rule that, as a matter of law, "furnish" under the statute in question does not include "giving access to."

That leaves only the question of whether the evidence in this case was sufficient to allow the jury to find a statutory violation under the instruction given. On this question, Petitioner faces significant hurdles. This Court has often recognized that a challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard. As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81–82 (S.D. Ohio Sept. 28, 2011):

> In *Jackson v. Virginia* [443 U.S. 307 (1979) ], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

It is important that when reviewing a sufficiency of the evidence challenge the Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir. 2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

As the Court of Appeals has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of the [*Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). In *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), the Court of Appeals explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007); *Nash v. Eberlin*, 258 Fed.Appx. 761, 765 (6th Cir. 2007). This Court recognizes, however, that in spite of the AEDPA, "it must distinguish reasonable speculation from sufficient evidence when reviewing a state court's application of Jackson." *Arthurs v. Warden, Warren Correctional Institution*, 2012 WL 995395, *9 (S.D. Ohio March 23, 2012) (internal quotations omitted), *adopted and affirmed* 2012 WL 3728013 (S.D. Ohio Aug. 28, 2012).

The narrow question before the Court, based on this authority, is whether the jury in Petitioner's case had before it sufficient evidence to conclude that Petitioner provided Tara Crego with access to his oxycodone. The state court said that it did, relying on the uncontroverted evidence that Crego was selling drugs from Petitioner's place of residence and that the drugs were kept in an unlocked medicine cabinet. It was not unreasonable for that court to conclude that such evidence was enough to show not just accidental or unintentional access, but that Petitioner intended that Crego have access to his medication for purposes of selling it. Under these circumstances, the state court's decision is not, in the words of 28 U.S.C. §2254(d), " contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." That being so, this Court cannot grant Petitioner relief on his fourth ground.

### III. Recommended Disposition

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this action be **DISMISSED**.

### IV. Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge