IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERRY SCHWAB,

    Petitioner,

v.

WARDEN, MARION
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:15-CV-0491
CHIEF JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE KEMP

## OPINION AND ORDER

On May 16, 2017, the Magistrate Judge issued a *Report and Recommendation* recommending that the petition for a writ of habeas corpus be denied and that this action be dismissed. (Doc. 25.) Petitioner has filed an *Objection* to the Magistrate Judge's *Report and Recommendation*. (Doc. 28.) Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow, Petitioner's *Objection* (Doc. 28) is **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

Petitioner's request for a certificate of appealability is **GRANTED**, in part.

Petitioner challenges his October 2012 convictions after a jury trial in the Athens County Court of Common Pleas on charges of aggravated trafficking in drugs, corrupting another with drugs, trafficking in drugs, and aggravated possession of drugs. He asserts that he was denied the effective assistance of appellate counsel (claim one); that the trial court improperly sentenced him on allied offenses of similar import (claim two); that he was denied a fair trial based on improper jury instructions (claim three); and that the evidence is constitutionally insufficient to

sustain his convictions (claim four). The Magistrate Judge recommended dismissal of Petitioner's claims as procedurally defaulted or without merit.

Petitioner objects to these recommendations. Petitioner specifically objects to the Magistrate Judge's recommendation that his claim of the denial of the right to the effective assistance of appellate counsel be dismissed as procedurally defaulted based on his failure to comply with state procedural rules requiring him to attach a copy of the record to his application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *See* App.R. 26(B)(2)(e). Petitioner contends that this rule serves no useful purpose and traps unwary *pro se* litigants. He contends that the state courts do not strictly or regularly enforce the procedural rule at issue as required by *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Petitioner also maintains that he complied with state procedural requirements because he attached those portions of the record available to him or he could not comply with state procedural requirements, because he was unable to obtain the required documents, despite his attempts to do so, from the clerk or counsel. As cause for his procedural defaults, Petitioner asserts the denial of the effective assistance of appellate counsel. Petitioner claims his attorney performed in a constitutionally ineffective manner by failing to oppose the State's motion for reconsideration of the state appellate court's decision vacating his conviction on corrupting a minor with drugs. He claims that his attorney had health issues and failed to communicate with him. Petitioner complains that the Magistrate Judge failed to address the merits of his claims, and he has provided further briefing in support of his claims on the merits. He objects to the Magistrate Judge's recommendation of dismissal of his claim of insufficiency of the evidence. Petitioner argues that the evidence is constitutionally insufficient to support all of his convictions. Petitioner seeks a certificate of appealability.

2

Petitioner's arguments are not well-taken. The state appellate court explicitly refused to address the merits of Petitioner's Rule 26(B) application due to his failure to attach the relevant portions of the record that was available to him, indicating in relevant part as follows:

> Schwab and his counsel had access to the record during his appeal because Schwab's appellate brief cites the record extensively. In addition, Schwab's application for reconsideration cites the record, and in his affidavit attached to the application, Schwab admits that he had access to the record because he specifies that he reviewed the record in preparing the application. Schwab also attached two file-stamped documents from the record to his application.
>
> Because Schwab did not attach copies of the relevant parts of the record to support the claims in his application and did not establish in his application that they were unavailable to him, his application does not comply with App.R. 26(B)(2)(e) so we deny it.

*Entry Denying Application for Reopening* (Doc. 8-1, PageID# 254-55) (citations omitted). Notwithstanding Petitioner's arguments to the contrary, he has thereby procedurally defaulted his claim of the denial of the effective assistance of appellate counsel, and this Court has previously enforced a procedural default under these same circumstances. *See Hutchison v. Warden, London Correctional Inst.*, No. 1:14-cv-874, 2015 WL 6798550 (S.D. Ohio Nov. 6, 2015). Nothing in the record supports Petitioner's claim that he could not obtain the relevant portions of the state record. He has failed to rebut the presumption of correctness afforded the state court's finding that he had access to record. Petitioner has waived his claims that the trial court improperly imposed sentence and issued improper jury instructions by failing to raise such issues on direct appeal. The denial of the effective assistance of appellate counsel cannot constitute cause for his procedural default, because he has likewise procedurally defaulted that claim. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (the constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as the claim has been presented to the state courts and is not, itself, procedurally defaulted). Further, the record reflects that the

3

evidence is constitutionally sufficient to sustain Petitioner's convictions. The state appellate court held as follows:

> For the March 9 incident, the jury found Schwab guilty of complicity to aggravated trafficking in Oxycodone and to trafficking in Alprazolam. R.C. 2923.03, the complicity statute, states:
>
> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (1) Solicit or procure another to commit the offense;
>
> (2) Aid or abet another in committing the offense;
>
> (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
>
> (4) Cause an innocent or irresponsible person to commit the offense.
>
> * * *
>
> "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. " '[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *Id.* at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982).
>
> R.C. 2925.03(A)(1), the trafficking statute at issue, states: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog[.]" If the person sells Oxycodone, a schedule II drug, the offense is aggravated trafficking in drugs. R.C. 2925.03(C)(1); R.C. 3719.41, Schedule II(A)(1)(n). If the person sells Alprazolam (Xanax), a schedule IV drug, the offense is trafficking in drugs. R.C. 2925.03(C)(2); R.C. 3719.41, Schedule IV(B)(1).

Schwab does not dispute the fact that the trafficking offenses occurred in his home on March 9, 2011, or that they occurred in the vicinity of a juvenile. However, he denies complicity to them. He claims Crego and Fidell had access to his medications and sold them without his knowledge. Schwab claims the only evidence of his complicity is the "prosecutor's testimony that he told Crego to go ahead and give Vole [sic] pills on March 9, 2011 ." (Appellant's Br. 5). And if he did make a statement on the "buy tape" to the effect that someone should give her want she wants, that "may well have been [his] response to a question by whomever he was talking to on the telephone." (Appellant's Br. 5). Later in his brief, Schwab acknowledges "several inferences" could be drawn about what happened on March 9. The "preferred" inference "lead[s] to the conclusion that Fidell and Crego removed drugs that [he] had been stockpiling for personal use and sold them to Vore while [he] was on the telephone in the other room." (Appellant's Br. 7). Schwab highlights the fact that Vore bought drugs from Fidell two more times.

However, the evidence adduced at trial established more than Schwab's "mere presence" in the house while Crego and Fidell trafficked in drugs. Crego testified without objection that people came to Schwab's house multiple times a week to purchase his Oxycodone and Alprazolam. Crego testified that Schwab told Fidell to sell the drugs for him, which Fidell did and gave Schwab the money. According to Vore's testimony, a few days before the March 9 incident she purchased Oxycodone at Schwab's house. Schwab told her that he would have Xanax "in a few days." And Schwab said he would "have the Xanax and the 30's." Vore testified that when she went to the house on March 9, and asked about the Xanax, Crego pulled out a bag of bars. Before Crego sold them, she "looked up at Terry and he gave her like a nod, like go ahead and give her what she wants kind of, because [Crego] didn't know me." Vore testified that Schwab told Crego, "Give her what she wants," in regards to the Xanax. Crego also testified that Fidell and Schwab told her to give Vore the Xanax bars. Crego claimed Schwab said to "[j]ust give [Vore] anything." And Crego testified that the Oxycodone and Alprazolam which she and Fidell sold to Vore belonged to Schwab.

This evidence reasonably supports the conclusion that Schwab knowingly encouraged or assisted Fidell and Crego in trafficking Oxycodone and Alprazolam, *i.e.*, he aided or abetted them. We need not consider whether the jury could have also concluded the evidence fit one of the other types of complicity in R.C. 2923.03(A). The jury was free to conclude that Schwab

5

intentionally stayed in the living room while his fiancée and her daughter sold his drugs in the kitchen in an effort to shield himself from criminal liability. The jury was likewise free to disbelieve Fidell's testimony and Schwab's statement to the effect that she never sold drugs for him, particularly in light of the close relationship they share.

. . . . Accordingly. . . we []conclude that sufficient evidence supports these convictions.

\*\*\*

Next, Schwab challenges his convictions that stem from the April 1 traffic stop—corrupting another with drugs (Oxycodone) and complicity to aggravated possession of drugs. We set forth the pertinent law on corrupting another with drugs and quoted the relevant portions of the complicity statute above. R.C. 2925.11(A), the drug possession statute at issue, provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." "If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with [certain exceptions] * * * whoever violates division (A) of this section is guilty of aggravated possession of drugs." R.C. 2925.11(C)(1). Oxycodone is the schedule II controlled substance at issue here. Schwab does not dispute the jury's finding that the amount of Oxycodone police seized was equal to or in excess of five times the bulk amount but less than 50 times the bulk amount.

Schwab complains that despite Crego's plea in juvenile court, "there is no evidence that she tampered with evidence or trafficked in drugs on [April 1, 2011]." (Appellant's Br. 6). However, such proof is not necessary for either conviction at issue. Schwab also claims there is "no evidence that [he] intended to sell the drugs contained in the pill bottle," and the evidence points only to "personal use" by him and Degarmore. (Appellant's Br. 6). Likewise, evidence of intent to sell is not necessary for either charge.

Later in his brief, Schwab contends that the "April 1, 2011 incident is* * * easily explained by concluding that [he] had the pills that were later discovered * * * on his person before leaving the Nelsonville residence. Neither Crego nor Degarmore saw what [he] did inside the residence [sic] in Columbus, and Cregor [sic] testified that [he] took pills from the same bottle on the to [sic]

6

Columbus as well as coming back. The better conclusion is that the drugs had been on [his] person during the entire trip and that they had been stockpiled for his personal use." (Appellant's Br. 7).

We find this argument confusing. Schwab seems to contend the pills Crego had were prescribed to him, so he and Crego could legally possess them. He cites no legal authority to support this claim. He indicates the reason the number of pills in the bottle exceeded his most recent prescription is that he stockpiled them from past prescriptions. However, the jury was free to conclude Schwab lacked a prescription for the pills seized. The fact that Schwab gave the pills to Crego when police stopped them supports that conclusion. And Schwab's stockpiling claim is inconsistent with evidence that suggests he was addicted to Oxycodone and complicit to trafficking in it.

Looking to the April 1 corrupting another with drugs charge, Schwab's argument focuses on whether he furnished or administered a controlled substance to Crego. Ample evidence supports the jury's conclusion that he furnished her with Oxycodone. Contrary to Schwab's argument, the State did not have to prove that he furnished Crego with the drug "for her own use." (Appellant's Br. 6). Again, Crego testified that Schwab handed her the bottle and she hid it in her bra after police initiated the stop. Crego thought he gave her the bottle because he was scared or nervous and she was "underage" and "wouldn't have got checked or searched." Based on this testimony, the jury could find Schwab knowingly supplied, provided, or equipped her with Oxycodone to conceal it from law enforcement and protect himself from criminal liability.

Moreover, the jury could conclude from Crego's testimony that Schwab aided and abetted her possession of the pill bottle full of Oxycodone. Again, she testified that he handed her the pill bottle when police stopped them. The jury could reasonably find he knowingly assisted or encouraged her, i.e., he aided or abetted her, to commit the offense of aggravated possession of drugs. We need not determine whether the jury could have also concluded the evidence fit one of the other types of complicity listed in R.C. 2923.03(A).

. . . Thus, we [] conclude that sufficient evidence supports them.

7

*State v. Schwab*, No. 12CA39, 2013 WL 5476402, at *5-9 (Ohio App. 4th Dist. Sept. 23, 2013), *vacated in part on reconsideration by State v. Schwab*, 2014 WL 356628 (Ohio App. 4th Dist. Jan. 21, 2014).

When viewing the facts in the light most favorable to the prosecution, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979), this Court agrees that the evidence is constitutionally sufficient to sustain these convictions. For the reasons addressed in the Magistrate Judge's *Report and Recommendation*, the Court likewise concludes that the evidence is constitutionally sufficient to sustain Petitioner's conviction on corrupting another with drugs, as it related to the March 9, 2011, incident. The record fails to reflect that Petitioner is entitled to relief, particularly under the heightened standard of review requiring a "double layer" of deference to state court determinations on the sufficiency of evidence. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). Therefore, Petitioner's *Objection* is **OVERRULED**.

Petitioner seeks a certificate of appealability. "In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of habeas corpus in federal court holds no automatic right to appeal from an adverse decision by a district court." *Jordan v. Fisher*, -- U.S. --. --, 135 S.Ct. 2647, 2650 (2015); 28 U.S.C. § 2253(c)(1)(requiring a habeas petitioner to obtain a certificate of appealability in order to appeal.) The petitioner must establish the substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This standard is a codification of *Barefoot v. Estelle*, 463 U.S. 880 (1983). *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (recognizing codification of *Barefoot* in 28 U.S.C. § 2253(c)(2)). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack,* 529 U.S. at 484 (quoting *Barefoot,* 463 U.S., at 893 n. 4).

Where the Court dismisses a claim on procedural grounds, however, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Thus, there are two components to determining whether a certificate of appealability should issue when a claim is dismissed on procedural grounds: "one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Id*. at 485. The court may first "resolve the issue whose answer is more apparent from the record and arguments." *Id*.

Although the state appellate court initially vacated Petitioner's conviction on corrupting another with drugs as related to the March 9, 2001, incident, it reversed its decision, concluding that the evidence satisfied Ohio's definition of "furnished." That issue involves the interpretation of state law. Under these circumstances, this Court simply cannot conclude that the record provides a basis for relief. 28 U.S.C. § 2254(d), (e). Moreover, nothing in the record supports Petitioner's claim that he could not have complied with the state procedural rules by attaching relevant portions of the state record. Petitioner therefore failed to establish cause and prejudice for his procedural defaults. That said, the Court is persuaded that reasonable jurists would debate whether the Court properly dismissed Petitioner's claims as procedurally defaulted.

Therefore, Petitioner's request for a certificate of appealability is **GRANTED**, in part. The Court certifies the following issue for appeal:

> Did Petitioner commit a procedural default of his claims that he was denied the effective assistance of appellate counsel, sentenced

on allied offenses of similar import, and denied a fair trial based on the issuance of improper jury instructions?

Petitioner's *Objection* (Doc. 28) is **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

**IT IS SO ORDERED**.

*[signature]* 7-12-2017
EDMUND A. SARGUS, JR.
Chief United States District Judge